UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Denise and Terry Cox, Kevin and Christa Haugen, Robert and Carrie Hvezda, Michelle Oelfke, and Jody and Brian Minnerath on behalf of themselves and all others similarly situated, | Court File No. 07-3652 (ADM/RLE) Class Action |
| Plaintiffs, | **SECOND AMENDED COMPLAINT IN CLASS ACTION** |
| v. | |
| Zurn Pex, Inc.; and Zurn Industries, Inc., | |
| Defendants. | |

Plaintiffs Denise and Terry Cox, Kevin and Christa Haugen, and Robert and Carrie Hvezda, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this Complaint in class action and state and allege as follows:

## THE PLAINTIFFS

1.      Plaintiffs and proposed class representatives Denise and Terry Cox are residents of and the owners of property in Detroit Lakes, Minnesota.

2.      Plaintiffs and proposed class representatives Kevin and Christa Haugen are residents and the owners of property in Pine Island, Minnesota.

3.      Plaintiffs Robert and Carrie Hvezda are residents and the owners of property in Alexandria, Minnesota.

4.      Plaintiff Michelle Oelfke is a resident of and the owner of property in Frazee, Minnesota.

5.      Plaintiffs Jody and Brian Minnerath are residents and the owners of property in Hudson Township, Minnesota.

6.      Plaintiffs and proposed class representatives bring this case on behalf of themselves and a class of similarly situated persons in the State of Minnesota.

7.      In the alternative, Plaintiffs and proposed class representatives bring this case on behalf of themselves and a class of similarly situated persons in the United States.

8.      In the alternative, Plaintiffs and proposed class representatives bring this case on behalf of themselves and a class of similarly situated persons in certain, but not all, of the United States.

## THE DEFENDANTS

9.      Defendant Zurn Pex, Inc. is a privately-held foreign entity that is in the business, among other things, of advertising, warranting, manufacturing, selling and servicing plumbing components.

10.     On information and belief, Zurn Pex, Inc. has its principle place of business in Texas.

11.     On information and belief, Zurn Pex, Inc. is responsible for some or all of the acts and omissions alleged herein.

12.     Defendant Zurn Industries, Inc. is a privately-held foreign entity that is in the business, among other things, of advertising, warranting, manufacturing, selling and servicing plumbing components.

13.     On information and belief, Zurn Industries, Inc. has its principle place of business in Pennsylvania.

14.     On information and belief, Zurn Industries, Inc. is responsible for some or all of the acts and omissions alleged herein.

15.     On information and belief, Zurn Pex, Inc. and Zurn Industries, Inc. have acted in concert with each other with the respect to the actions and omissions alleged herein.

16.     At various times in marketing and advertising, in addressing quality control issues, warranty issues, manufacturing issues and legal issues associated with the subject matter of this Complaint, the Defendants have used literature and correspondence that reference "Zurn Pex, Inc.", "Zurn Industries, Inc.", "Zurn Plumbing Products Group", "Qest, Inc. a division of Zurn Industries, Inc." and "Zurn Industries, Inc. Qest Operations."

17.     The products at issue are advertised at websites with URL addresses www. Zurn.com and www.zurnpex.com.

18.     On information and belief, "Qest, Inc." and "Qest Operations" are not separate legal entities.

19.     On information and belief, "Zurn Plumbing Products Group" is not a separate legal entity.  Rather, "Zurn Plumbing Products Group" is a trade name used by both "Zurn Industries, Inc." and "Zurn Pex, Inc."

20.     On information and belief, Zurn Pex, Inc. and Zurn Industries, Inc. are jointly and/or severally liable to the Plaintiffs and putative class members as joint venturers, or in the alternative, operate such that any pretend corporate formalities amongst and between the two should be disregarded or pierced, or in the alternative, are subject to an agency relationship, or in the alternative, are subject to predecessor and successor liability theories, or in the alternative, are otherwise jointly and severally liable for all acts and omissions alleged herein.

21.     Throughout the remainder of this Complaint, Zurn Pex, Inc. and Zurn Industries, Inc. and their respective predecessors will be collectively referred to as "Zurn."

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the parties, the proposed class, and the causes of action asserted herein pursuant to Rule 23 of the Federal Rules of Civil Procedure.

23.     Venue in this forum is proper in that the proposed class representatives reside in Minnesota, certain putative class members reside in Minnesota, the causes of action for the class representatives arose, in part, in Minnesota, the causes of action for certain putative class members arose, in part, in Minnesota, and Zurn transacts business within Minnesota.

24.     Upon information and belief, this is the first class action commenced concerning the subject matter of this Complaint.

25.     Upon information and belief, when this action was originally commenced, no other class action or proposed class action had been asserted against Zurn relating to the subject matter of this Complaint.

## SUMMARY OF CLASS ACTION

26.     Plaintiffs on behalf of themselves and all other persons similarly situated bring this action for and on behalf of the owners of homes and buildings with Zurn plumbing systems with cross-linked polyethylene ("Pex") tubing.  These systems are defective.

27.     Plaintiffs and putative class members have been damaged as a result of the design, development, advertisement, marketing, sale and warranty misconduct of Zurn in connection with Zurn Pex plumbing systems installed with Zurn's brass crimp fittings.

28.     Zurn has used different names for its brass crimp fittings since 2002, including referring to them as "QestPEX Crimp System," "Qicksert fittings," and "Qick/Sert insert fittings" (hereinafter referred to as "brass crimp fittings").

29.     Zurn has sold brass crimp fittings for its Pex plumbing systems in Minnesota and in each of the United States.

30.     Zurn warrants and advertises that its brass crimp fittings provide "a worry free" plumbing system.

31.     Zurn warrants and advertises that, with its brass crimp fittings, "you can rest assured that your new plumbing . . . system will provide a lifetime of reliable service."

32.     Zurn warrants and advertises its brass crimp fittings as having a 25-year warranty – that expressly covers consequential damages arising from leaks or failures in the plumbing system.

33.     Zurn's brass crimp fittings, however, are defectively designed and manufactured and have been failing as quickly as one year or less after being put into service.

34.     The failures of the Zurn brass crimp fittings have and will in the future cause water leaks.  These leaks have and will in turn cause extensive damage to other property including the homes and personal property of the owners.  Such water leaks can result in mold and other damage which can be harmful to the health of putative class members.

35.     The foregoing types of damages arising from Zurn's defective brass crimp fittings are reasonably foreseeable at the time of design and manufacture of the brass crimp fittings.

36.     The foregoing types of damages are reasonably foreseeable at the time of sale of the brass crimp fittings.

37.     Zurn's brass crimp fittings have been prematurely failing by the hundreds, if not thousands despite being used for potable water systems in the state of Minnesota for only a few years.

38.     The foregoing brass fitting failures have included premature failures in the State of Minnesota.

39.     After convincing consumers to purchase the Zurn brass crimp fittings based in part on the 25-year warranty, Zurn now refuses to honor the warranty because the failures are allegedly not "covered in [Zurn's] cost structure."

40.     Plaintiffs and putative class members seek damages arising from and proximately caused by Zurn's breach of consumer protection statutes, fraud and misrepresentations, negligence, breach of contract and breach of warranties.  The Plaintiffs and putative class members also seek declaratory and injunctive relief, as described below.

## DEFINITION OF PROPOSED CLASSES

41.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The first proposed class is defined as:

> All persons and entities that own a structure located within the State of Minnesota that contains a Zurn Pex plumbing system with brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

42.     In the alternative, Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The second proposed class is defined as:

> All persons and entities that own a structure located within the United States that contains a Zurn Pex plumbing system with brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that

other alleged warranty limitations applied.

43.     In the alternative, Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The third proposed class is defined as:

> All persons and entities that own a structure located within certain, but not all, of the United States, all as may be more specifically identified in subsequent motions to certify a class, that contains a Zurn Pex plumbing system with brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

44.     For all proposed classes, Plaintiffs specifically exclude Zurn or its related entities from the proposed class, all subsidiaries or affiliates of Zurn; any entity in which Zurn has a controlling interest; and any and all of Zurn's employees, affiliates, legal representatives, heirs, successors or assignees.

45.     Plaintiffs also specifically exclude from the Class any person or entity that has previously commenced and concluded a lawsuit against Zurn arising out of the subject matter of this lawsuit.

46.     Plaintiffs also specifically exclude from the Class the judge assigned to this case and any member of the judge's immediate family.

47.     For all proposed classes, Plaintiffs specifically include the claims of all persons or entities, like insurance companies, that have paid for the repair, replacement and / or damage caused by prematurely failed Zurn brass crimp fittings.

## FACTUAL BACKGROUND

**Zurn Pex Plumbing Background**

48.     Zurn is the manufacturer and seller of various plumbing products including Pex plumbing materials.

49.     Pex is an acronym for cross-linked polyethylene.  Polyethylene is the raw material and the "X" in the generic name "Pex" refers to the cross-linking of the polyethylene across its molecular chains

50.     For decades, plumbers and homeowners have used copper piping for potable water plumbing systems.

51.     Copper is and has been accepted by virtually all plumbing codes throughout the United States.

52.     In the 1990's, manufacturers in the United States began selling and plumbers began installing potable water plumbing systems with tubing made from polybutylene plastic.

53.     Zurn was a manufacturer, seller and distributor of plumbing systems using tubing made from polybutylene plastic.

54.     Plumbing systems using tubing made from polybutylene plastic were touted by manufacturers as being easier to install, cheaper and longer-lasting than copper plumbing systems.

55.     Polybutylene plumbing systems quickly proved to be poorly conceived, designed and manufactured systems.

56.     Those polybutylene systems began to fail prematurely in the field causing substantial property damage.

57.     A substantial amount of litigation ensued as a result of the widespread, premature failure of polybutylene plumbing systems.

58.     Several class actions were filed and settlements in those cases exceeded several billion dollars.

59.     At least in part in response to the failure of polybutylene plumbing systems, virtually all manufacturers ceased manufacturing polybutyene plumbing systems for sale in the United States.  In addition, most plumbing codes eventually prohibited the installation of polybutylene plumbing systems.

60.     In recent years, Zurn and other manufacturers developed alternative, non-copper plumbing products.

61.     Specifically, Zurn designed, manufactured and marketed a plumbing system using Pex tubing for use in residential and commercial settings.

62.     Zurn and other manufacturers of Pex plumbing products have touted Pex plumbing systems as being easier to install, cheaper and longer-lasting than copper plumbing systems.

63.     In recent years, more plumbing state and local plumbing codes have allowed for the installation of Pex plumbing products in addition to copper piping.

64.     Installation of Pex plumbing systems, however, remains prohibited in certain areas of the United States.

**Zurn Pex Brass Crimp Fittings**

65.      Zurn's Pex plumbing system uses a crimp connection design in which insert fittings made of brass alloy are inserted into the Pex tubing.  The brass fittings are secured by

9

using a special tool that crimps copper rings around the outside of the tubing, which in turn,

creates a seal between the Pex tubing and the brass fittings.

66.     The crimp system design chosen by Zurn for its Pex plumbing systems places a

great deal of stress on the brass crimp fittings once the system is assembled as intended.

67.     The design, choice of material and manufacturing methods of the Zurn brass

crimp fittings also result in residual stress on the fittings following the manufacturing process but

before the system is assembled in the field.

68.     Zurn was negligent in its design and manufacture of the brass crimp fittings for a

number of reasons, including Zurn's choice of a high zinc content brass alloy as the material

used for the fittings.

69.     Zurn knew or should have known that the brass alloy it chose for the brass crimp

fittings made the fittings susceptible to premature failure through various processes like

dezincification and stress corrosion cracking.

70.     Zurn knew or should have known that its crimp fitting design, Pex system design,

and choice of brass alloy also made the brass crimp fittings susceptible to premature failure

through stress corrosion cracking.

71.     Zurn's design and materials choices have created a product that begins to fail on

its first day of use, even if perfectly installed in its intended environment.

72.     Because of their defective design and manufacture, Zurn's brass crimp fittings

failed in their intended purpose.

73.     Because of their defective design and manufacture, Zurn's brass crimp fittings

are inherently defective and are substantially certain to fail within the 25 year express warranty

provided by Zurn and / or the useful life of the fittings.

74.     All class members own Zurn Pex plumbing systems with brass crimp fittings that have already or are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their plumbing systems.

**Inadequate Testing of Zurn Brass Crimp Fittings**

75.     Zurn did not test the brass crimp fittings in their anticipated environments before selling those brass crimp fittings to the public.

76.     In an effort to save time and money, Zurn did not end use test the brass crimp fittings in Pex systems.

77.     Zurn conducted inadequate testing on its brass crimp fittings and failed to test things that it knew or should have known would lead to premature failure of the brass crimp fittings.

78.     Zurn also failed to investigate or test whether well-known and expected water conditions would lead to premature failure of the brass crimp fittings.

**False Advertising of Zurn Pex Systems**

79.     Zurn falsely advertised that the Pex plumbing system – including its brass crimp fitting components -- was reliable despite never testing and determining the reliability of its product when used in real world conditions.

80.     Zurn holds itself out as a "proven leader in the plumbing industry" and as a manufacturer of reliable plumbing products.

81.     Zurn also advertises itself as being "the time tested and proven leader in the flexible plumbing industry."

82.     Among other false and inaccurate representations of its Pex plumbing systems with brass crimp fittings, Zurn falsely advertised and represented that the system "resists mineral buildup, rust, corrosion, and electrolysis," had "No exotic parts to fail," and made "More positive connections, quicker, easier."

83.     Zurn also falsely represented its QestPEX Crimp System as "utilizes high quality brass fittings and copper crimp rings to provide a connection which is stronger than the pipe itself" and that "When properly installed, the QestPEX Crimp System is a worry free system!"

84.     Zurn also falsely represented that owners of its Pex plumbing systems "can rest assured that your new plumbing . . . system will provide a lifetime of reliable service."

85.     Zurn falsely advertises its brass crimp fitting system as "the most time tested and reliable fitting system available."

86.     Zurn also falsely advertises that its brass crimp fittings "are actually stronger than the pipe itself and once crimped, they can not be pulled apart or blown out."

87.     Zurn also falsely advertises that its brass crimp fittings and ease of installation will provide "perfect connections every time, giving you a plumbing system that will be worry free for a lifetime."

88.     Zurn also falsely marketed its Pex plumbing systems as being safe, reliable, and corrosion-resistant.

89.     Zurn also falsely marketed its Pex plumbing systems as being proven, time-tested and worry free.

90.     Zurn also falsely marketed and warranted its Pex plumbing systems as being extensively tested, and that based on the results of those tests, the Pex plumbing system and its

brass crimp fittings were properly designed, developed, marketed, and manufactured so as to perform adequately, reliably and as represented.

91.     Zurn also falsely marketed and warranted that its Pex plumbing systems were superior to copper plumbing systems.

92.     Zurn also falsely marketed and warranted that its Pex plumbing systems and the brass crimp fittings were of superior design and materials than similar products made by competitors.

93.     Zurn and its authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing plumbing suppliers, builders, plumbers, and consumers to purchase and install Zurn Pex plumbing systems and its brass crimp fittings in their properties in the state of Minnesota and elsewhere.

94.     Zurn also made numerous material omissions and uniformly withheld important information relating to the design, reliability and performance of its brass crimp fittings and Pex plumbing systems.

95.     Had Zurn not withheld and omitted important information about the design, reliability and performance of its brass crimp fittings and Pex plumbing systems, Plaintiffs and the members of the putative class would not have purchased those products.

**Field Failures of Zurn Pex Systems**

96.     By 2003 at the latest, Zurn began receiving notice from the field that its brass crimp fittings were failing prematurely, including within the State of Minnesota.

97.     Zurn brass crimp fittings have failed prematurely in numerous locations throughout Minnesota.

98.     For example, Zurn brass crimp fittings have failed prematurely in properties located in Garrison, Brainerd, Detroit Lakes, Alexandria, Moundsview, Forest Lake, Farmington, Hutchinson, Bird Island, Willmar, Brandon, Pillager, Garfield, Grey Eagle, Elbow Lake, and Audobon.

99.     Zurn brass crimp fittings have failed prematurely in properties located elsewhere in Minnesota.

100.    Zurn brass crimp fittings have failed prematurely in properties located in places outside Minnesota.

101.    By July 1, 2005, Zurn had admitted that two to three years earlier it had noticed increased failure rates of its brass crimp fittings in Minnesota.

102.    By July 1, 2005, Zurn had admitted that "the majority of fittings that are cracking are tees and elbows."

103.    By July 1, 2005, Zurn had admitted that "the majority of these fittings are cracking from inside the wall cavity of the fittings."

104.    As but one example of the high number of premature failures in Minnesota, one plumbing company alone had reported over 150 failures of Zurn brass crimp fittings by the end of 2006.

105.    Because of the unacceptable rate of premature failure, that plumbing company stopped using Zurn's Pex systems and brass crimp fittings and switched to a competitor's product.  The competitor's product has performed well without failure, in the same installation area.

106.    By early 2005, Zurn directed its Minnesota distributors to stop selling the brass crimp fittings.

107.    By early 2005, Zurn directed its Minnesota distributors to sell only its Poly Alloy fittings for Pex systems used in Minnesota.

108.    By early 2005, Zurn's Minnesota distributors sent back their remaining inventory of Zurn brass crimp fittings.

109.    By early 2005, Zurn provided credits to its Minnesota distributors for the returned brass crimp fittings.

110.    Zurn has also received reports that its brass crimp fittings have failed prematurely in states other than Minnesota.

**Competitors' Use of Different Product Materials and Designs**

111.    Several of Zurn's competitors in the Pex plumbing market chose designs and materials that are much more resistant to the premature failure problems that have plagued the Zurn Pex brass crimp fittings.

112.    For example, some of Zurn's competitors in the Pex plumbing market chose fitting and assembly designs that exert less stress on the fittings than the Zurn Pex brass crimp fittings.

113.    Some of Zurn's competitors in the Pex plumbing market chose fitting materials like copper, bronze and plastic that are less susceptible to premature failure than the Zurn Pex brass crimp fittings in residential plumbing applications.

**Plaintiffs' Circumstances**

114.    Plaintiffs Denise and Terry Cox, through their licensed plumber, purchased and had a Zurn Pex plumbing system installed in their home located in Detroit Lakes, Minnesota.

115.     Before installing the Zurn Pex system at the Cox home, plumbers from Hank's Heating, had been trained and certified by Zurn representatives to install Zurn Pex systems with brass crimp fittings.

116.     Just over one year after installation, one of the Zurn brass crimp fittings failed at the Cox home causing damage to property other than the Pex plumbing system.

117.     Only months later, another Zurn brass crimp fitting failed at the Cox home causing damage to property other than the Pex plumbing system.

118.     Plaintiffs Kevin and Christa Haugen, through their licensed plumber, purchased and had a Zurn Pex plumbing system installed in their new home in Pine Island, Minnesota.

119.     The Haugen home was completed in July 2005 and gets its water from the city water system.

120.     Only two and a half years after installing Zurn Pex brass crimp fittings at their home, the Haugens suffered a complete failure of one of those fittings, leading to water damage to property other than the Zurn Pex plumbing system.

121.     Plaintiffs Robert and Carrie Hvezda purchased and had a Zurn Pex plumbing system installed by a licensed plumber in their new home in Alexandria, Minnesota.

122.     The Hvezda home was completed in 2003 and gets its water from a private well. Since the initial installation, several Zurn Pex brass crimp fittings have failed at the Hvezda home.

123.     In 2005, Plaintiff Michelle Oelfke purchased a newly-constructed home in Frazee, Minnesota that had a Zurn Pex plumbing system installed in it.

124.    Before installing the Zurn Pex system at the Oelfke home, her plumber, Hank's Heating, had been trained and certified by Zurn representatives to install Zurn Pex systems with brass crimp fittings.

125.    Just over two years after installation, Ms. Oelfke experienced the first failure of a Zurn brass crimp fitting in her home causing damage to property other than the Pex plumbing system.

126.    Approximately one year later, Ms. Oelfke experienced a second failure of a Zurn brass crimp fitting at her home causing damage to property other than the Pex plumbing system.

127.    Ms. Oelfke paid funds to fix damage from both Zurn brass crimp fitting failures in her home, paying some or all of the money out of her own pocket.

128.    Plaintiffs Jody and Brian Minnerath reside in Hudson Township, MN in connection with the purchase of their new home, purchased and had a Zurn Pex plumbing system installed in the home.

129.    The Minneraths' Zurn system first began noticeably failing in 2006 when the system began leaking through the interior ceiling of their home.  Only months later, other Zurn brass crimp fittings failed at the Minneraths' home causing damage to property other than the Zurn Pex plumbing system.

130.    Since then, the Minneraths' Zurn Pex plumbing system has leaked elsewhere throughout the house.  The Minneraths have suffered considerable damage to their home and other property as a result of the failures of the Zurn Pex plumbing system.

131.    Plaintiffs, like many class members, have already suffered out-of-pocket damage to repair their home following the premature failures of the Zurn Pex brass crimp fittings. Likewise, all putative class members have incurred or are reasonably certain to incur, the cost of

repairing their homes because of fittings failures and / or prematurely replacing their plumbing systems.

132.    Plaintiffs and the proposed class members suffered general and specific compensatory and contractual damages including, without limitation consequential, incidental, loss of use, diminution of value, attorneys' fees, costs and disbursements.

**Zurn's Warranty Misconduct**

133.    Plaintiffs Denise and Terry Cox presented a warranty claim to Zurn for the damage caused by the premature failure of the brass crimp fittings.

134.    Zurn denied the Cox warranty claim and alleged that the failure of the Zurn brass crimp fittings at the Cox home was not covered by Zurn's 25-year warranty.

135.    Zurn denied the Cox warranty claim because of alleged limitations and disclaimers Zurn contended were part of its warranty.

136.    After the first Zurn Pex brass crimp fitting failed at the Hvezda home, the Hvezdas submitted a warranty claim to Zurn.  Zurn paid that warranty claim.

137.    Thereafter, another Zurn Pex brass crimp fitting failed at the Hvezda home, again causing damage to property other than the Zurn Pex plumbing system.  The Hvezdas submitted another warranty claim to Zurn.

138.    Zurn rejected the Hvezdas' second warranty claim on the purported basis that the premature failure of the Zurn Pex brass crimp fittings was caused by "aggressive" or "corrosive" water.

139.    Zurn's brass crimp fittings, however, were uniformly sold without any limitations of warranties because Zurn and / or its distributors failed to provide any alleged warranty limitations or disclaimers at the time of the sale of the brass crimp fittings.

140.    In fact, Zurn brass crimp fittings are provided to plumbers and / or consumers in plastic bags without any warranty disclaimers.

141.    Zurn did not provide any alleged warranty disclaimers or limitations at the time of sale of the brass crimp fittings used in Plaintiffs' homes.

142.    Zurn did not provide any alleged warranty disclaimers or limitations at the time of sale of the brass crimp fittings used in the structures of any of the members of the putative class.

143.    Minnesota law, and the laws of other states, requires a seller of a product to provide the purchaser of the product with any alleged warranty disclaimers or limitations. Failure to provide the alleged warranty limitations or disclaimers at the time of sale renders such attempted disclaimers and limitations invalid.

144.    As a result, Zurn well knew that it was legally obligated to compensate all consumers for their full measure of damages arising out of brass crimp fitting failures.

145.    Pursuant to uniform company policy, Zurn provided false, deceptive, misleading and fraudulent information to consumers with failed Zurn Pex systems by advising them that the Zurn warranty was subject to vague and ambiguous limitations about "corrosion" and "corrosive water."

146.    In response to the claims of its customers, Zurn has adopted a uniform company policy not to pay customers their full measure of damages.

147.    Zurn's attorneys and corporate executives were aware of this misconduct and condoned the misconduct because the flood of warranty claims Zurn has received were not included in Zurn's "cost structure" for these systems.

148.     Beginning in at least 2002 or soon thereafter, Zurn became aware through various claims and reports that the Zurn Pex brass crimp fittings that it was manufacturing, distributing and advertising were subject to premature failures, problems and deterioration.

149.     Despite the fact that Zurn knew its product was defective and that its system would not perform as advertised, warranted or otherwise expressly represented, Zurn continued to sell the product to the public without correction and, in fact, concealed from the public the fact that its Pex system and brass crimp fittings were defective, not durable and would begin to fail immediately upon being placed into service.

150.     Because the Zurn Pex plumbing system related to the habitability of persons' homes, Zurn had a duty to the consumer and to the public to disclose the defective nature of its system and not to conceal and suppress the defective nature of the product from the Plaintiffs and putative class representatives.

151.     Zurn, however, has engaged in a scheme to cover up the true nature of the problem with its brass crimp fittings and Pex plumbing system.

152.     Consistent with the usage in the plumbing trade, Zurn originally covered warranty claims for the premature failures of its brass crimp fittings but, after realizing the magnitude of the problem, began denying the warranty claims blaming the premature failures on "aggressive water."

153.     Zurn knew the cause of the premature failures was not "aggressive water" and has fraudulently concealed and suppressed from the Plaintiffs and putative class the true nature of the problems with the Pex plumbing and brass crimp fitting system.

154.     To this day, Zurn continues in this pattern of concealment and suppression by deliberately and knowingly misrepresenting to the public the true nature of the problems with the

brass crimp fittings.  In fact, many members of the putative class are still unaware that their plumbing system is prematurely failing and will continue to fail due to its design defect.

## SATISFACTION OF CLASS PREREQUISITES

155.    This class action satisfies numerosity, commonality, typicality, adequacy and superiority requirements for maintaining a class.

156.    **Numerosity.**  Pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, the proposed class "is so numerous that joinder of all members is impracticable."  The number of members of the proposed class is believed to be tens of thousands of individuals and/or entities that own properties with Zurn Pex plumbing systems with brass crimp fittings.

157.    Zurn's own representatives have publicly stated that Zurn sold more than two million fittings in the State of Minnesota alone from 2003 to 2006.  Joinder of the persons and entities into whose properties the Zurn Pex plumbing systems were installed is impractical and not feasible.

158.    **Commonality.**  Pursuant to Rule 23.(a)(2) of the Federal Rules of Civil Procedure, the proposed class shares "questions of law or fact" that predominate and individualized issues.  The common questions include, but are not limited to, the following:

- Were Zurn's brass crimp fittings defectively designed for their intended application?

- If so, what is the nature of the design defect?

- Did Zurn fail to warn consumers that the brass crimp fittings were not properly tested during design and development process?

- Did Zurn adequately warn consumers about any types of installations that may cause premature failure of the brass crimp fittings?

- Did Zurn make fraudulent, false, deceptive and/or misleading statements in connection with the sale of Zurn Pex plumbing systems in its product literature, including those relating to standards and reliability?

- Did Zurn omit material information when it sold its Pex systems and brass crimp fittings?

- Did Zurn properly account for foreseeable variations in installation in the development and design of the Zurn Pex plumbing system and brass crimp fittings?

- Did Zurn exercise reasonable care in the design, manufacture and testing of the Zurn Pex plumbing system and brass crimp fittings?

- Are the brass crimp fittings progressively deteriorating at an accelerated rate?

- Will the brass crimp fittings fail prematurely?

- Did Zurn deliberately sell or allow brass crimp fittings to be distributed after it knew the fittings were failing at an increased rate?

- Did Zurn engage in fraudulent, false, deceptive and/or misleading misconduct with respect to the handling of warranty claims?

- What categories of damages are recoverable for owners of structures with Zurn Pex plumbing systems and brass crimp fittings, e.g., replacement, consequential, incidental or other damages?

- Are the Plaintiffs entitled to relief under the U.C.C. for breach of the implied warranty of merchantability?

- Are the Plaintiffs entitled to relief under the U.C.C. for breach of the implied warranty of fitness for a particular purpose?

- Are the Plaintiffs entitled to relief under consumer protection statutes?

- Can the class obtain a declaration concerning the types and categories of damages and remedies available to putative class members?

- Should Zurn be enjoined from denying warranty claims based on alleged warranty disclaimers or limitations that were not provided to the purchaser at the time of sale of the brass crimp fittings?

- Are Plaintiffs' claims barred in whole or in part by any of Zurn's affirmative defenses?

159.   **Typicality.**  Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, the claims of the proposed class representatives, Plaintiffs "are typical of the claims … of the class."  Plaintiffs and all members of the proposed class who own Zurn's defective Pex plumbing

systems with brass crimp fittings have suffered damages as a result of Zurn's wrongful acts and misconduct.  Pursuant to corporate directives, Zurn engaged in a similar pattern of misconduct towards both the Plaintiffs and all other putative class members.

160.   **Adequacy**.  Pursuant to Rule 23(a)(4) of the Federal Rules of Civil Procedure, the proposed class representatives "will fairly and adequately protect the interests of the class." The Plaintiffs have no adverse interests to the proposed class members.  Plaintiffs were sold a plumbing system with defective brass crimp fittings.  The Plaintiffs have retained a litigation firm, Larson · King, LLP, whose attorneys have substantial resources, experience and success in the prosecution and defense of class action, mass tort and complex litigation, and the insurance coverage and settlement issues attendant to the same.

161.   **Superiority.**  Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method of resolving this action for the following reasons:  A class action in this instance conserves the resources of the proposed class, Zurn and the Court.  The damages of most putative class members are not, in isolation, significant enough to hire an attorney on a contingency basis, and the burden and expense of hiring an attorney on a per diem basis for the Plaintiffs and most putative class members, makes it difficult if not impossible for the class members to seek redress.  On information and belief, neither the Minnesota Attorney General nor the Attorney General of any other state has brought an enforcement action against Zurn to remedy the claims asserted herein.

Because the nature of the claims involved, the class members need swift and uniform resolution of their claims before additional damage is caused by failures.  Zurn has been uniformly refusing to pay the Plaintiffs and putative class members their full damages.

Further, there may or will be other cases pending against Zurn.  Serial adjudications in numerous venues is not efficient, timely, or proper.  Judicial resources throughout Minnesota and United States will be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of thousands of claimants in any one suit would be impractical or impossible. Individualized judgments and rulings could result in inconsistent relief for similarly situated plaintiffs.  Individualized suits could also establish incompatible standards of conduct for Zurn in creating, marketing, sale and post-sale conduct in connection with Zurn's Pex plumbing systems and brass crimp fittings.

## COUNT I

### (CONSUMER FRAUD)

162.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

163.    Minnesota Statutes § 325F.69, subd. 1 makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby…."  Consumer protection laws of other states make similar conduct unlawful.

164.    By engaging in the conduct described herein, Zurn violated and continues to violate Minn. Stat. § 325F.69, subd. 1 and the similar laws of other states.

165.    Zurn's wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, includes, by way of example and not by limitation:

a.    Zurn's fraudulent, misleading, and deceptive statements and practices relating to Zurn's Pex plumbing system and brass crimp fittings;

      b.      Zurn's warranty related misconduct, including its fraudulent, deceptive and unfair practice of lying about unenforceable warranty limitations;

      c.      Zurn's fraud and misrepresentation by omission, of information about the defective nature of Zurn's Pex plumbing system and brass crimp fittings, the improper design of the products, and Zurn's knowledge of those defects, and

      d.      Zurn's concealment of the true nature of its defective plumbing system.

166.     As a result of Zurn's fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practice practices relating to the sale of its Pex plumbing systems and brass crimp fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective.

167.     As a result of Zurn's fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass crimp fittings, but also include, without limitation, consequential and incidental damages.

168.     That as a direct, proximate and foreseeable result of Zurn's violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT II

### (UNLAWFUL TRADE PRACTICES)

169.     Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

170.     Minnesota Statutes § 325D.13 provides that, "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality,

ingredients or origin of such merchandise."  Consumer protection laws of other states make similar conduct unlawful.

171.    By engaging in the conduct described herein, Zurn violated and continues to violate Minn. Stat. § 325D.13 and the similar laws of other states.

172.    Zurn's wrongful conduct and misrepresentation of the true quality of its Pex plumbing systems and brass crimp fittings, includes, by way of example and not by limitation:

    a.    Zurn's fraudulent, misleading, and deceptive statements relating to the true quality of Zurn's Pex plumbing system and brass crimp fittings;

    b.    Zurn's fraud and misrepresentation by omission, of information about the defective nature of Zurn's Pex plumbing system and brass crimp fittings, the improper design of the products, and Zurn's knowledge of those defects, and

    c.    Zurn's concealment of the true nature of its defective plumbing system

173.    Zurn and its agents and distributors also misrepresented the true quality of the Zurn Pex plumbing system and its brass crimp fittings by making the various statements about the alleged quality of the system and brass crimp fittings referenced herein.

174.    As a result of Zurn's practices relating to misrepresentation of the true quality of the Pex plumbing systems and its brass crimp fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective.

175.    As a result of Zurn's practices relating to misrepresentation of the true quality of the Pex plumbing systems and its brass crimp fittings, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass crimp fittings, but also include, without limitation, consequential and incidental damages.

176.     That as a direct, proximate and foreseeable result of Zurn's violation of statute,

the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of

$50,000.00.

## COUNT III

## (DECEPTIVE TRADE PRACTICES)

177.     Plaintiffs and proposed class members reallege the foregoing paragraphs,

inclusive, as though fully set forth herein.

178.     Minnesota Statutes § 325D.44, subd. 1 provides in part:

> A person engages in a deceptive trade practice when, in the
> course of business, vocation, or occupation, the person:
>
> > (5)     Represents that goods or services
> > have…characteristics, ingredients, uses,
> > benefits…that they do not have…
> >
> > (7)     Represents that goods or services are of a
> > particular standard, quality, or grade,…if they are
> > of another.
> >
> > (13)   Engages in any other conduct which
> > similarly creates a likelihood of confusion or of
> > misunderstanding.

Consumer protection laws of other states make similar conduct unlawful.

179.     By engaging in the conduct described herein, Zurn violated and continues to

violate Minn. Stat. § 325D.44 and the similar laws of other states.

180.     Zurn's wrongful conduct and misrepresentation of the true characteristics,

standards, quality, and grade of its Pex plumbing systems and brass crimp fittings, includes, by

way of example and not by limitation:

a.     Zurn's fraudulent, misleading, and deceptive statements relating to the true
characteristics, standards, quality, and grade of Zurn's Pex plumbing system and
its brass crimp fittings;

b.      Zurn's fraud and misrepresentation by omission, of information about the defective nature of Zurn's Pex plumbing system and its brass crimp fittings, the improper design of the products, and Zurn's knowledge of those defects, and

c.      Zurn's concealment of the true nature of its defective plumbing system

181.    Zurn and its agents and distributors also misrepresented the true characteristics, standards, quality, and grade of the Zurn Pex plumbing system and its brass crimp fittings by making the various statements about the alleged quality of the system and brass crimp fittings referenced herein.

182.    As a result of Zurn's practices relating to misrepresentation of the true characteristics, standards, quality, and grade of the Pex plumbing systems and its brass crimp fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective.

183.    As a result of Zurn's practices relating to misrepresentation of the true characteristics, standards, quality, and grade of the Pex plumbing systems and its brass crimp fittings, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass crimp fittings, but also include, without limitation, consequential and incidental damages.

184.    That as a direct, proximate and foreseeable result of Zurn's violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT IV

## (FALSE ADVERTISING)

185.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

186.     That Minnesota Statutes § 325F.67 provides in part:

> Any person, firm, corporation, or association who, with intent to sell or in
> any way dispose of merchandise, …service, directly or indirectly, to the
> public, for sale or distribution, or with intent to increase the consumption
> thereof, or to induce the public in any manner to enter into any obligation
> relating thereto, makes, publishes, disseminates, circulates, or places
> before the public, or causes, directly or indirectly, to be made, published,
> disseminated, circulated, or places before the public, in this state, in a
> newspaper or other publication, or in the form of a book, notice, handbill,
> poster, bill, label, price tag, circular, pamphlet, program, or letter, or over
> any radio or television station, or in any other way, an advertisement of
> any sort regarding merchandise,…service or anything so offered to the
> public for use, consumption, purchase, or sale, which advertising contains
> any material assertion, representation or statement of fact which is untrue,
> deceptive, or misleading, shall, whether or not pecuniary or other specific
> damage to any other person occurs as a direct result thereof, be guilty of a
> misdemeanor, and any such act is declared to be a public nuisance and
> may be enjoined as such.

Consumer protection laws of other states make similar conduct unlawful.

187.     That by engaging in the conduct described herein, Zurn violated and continues to

violate Minn. Stat. § 325F.67 and the similar laws of other states.

188.     Zurn's untrue, deceptive, and misleading assertions and representations about its

Pex plumbing systems and brass crimp fittings, include, by way of example and not by

limitation:

    a.     Zurn's fraudulent, misleading, and deceptive statements relating to the true
        characteristics, standards, quality, and grade of Zurn's Pex plumbing system and
        its brass crimp fittings;

    b.     Zurn's fraud and misrepresentation by omission, of information about the
        defective nature of Zurn's Pex plumbing system and its brass crimp fittings, the
        improper design of the products, and Zurn's knowledge of those defects, and

    c.     Zurn's concealment of the true nature of its defective plumbing system

189.     Zurn and its agents and distributors also made untrue, deceptive, and misleading

assertions and representations about the Zurn Pex plumbing system and its brass crimp fittings

by making the various statements about the alleged quality of the system and brass crimp fittings referenced herein.

190.    As a result of Zurn's untrue, deceptive, and misleading assertions and representations about the Pex plumbing systems and brass crimp fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective.

191.    As a result of Zurn's untrue, deceptive, and misleading assertions and representations about the Pex plumbing systems and brass crimp fittings, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass crimp fittings, but also include, without limitation, consequential and incidental damages.

192.    Plaintiffs seek to enjoin Zurn from untrue, deceptive, and misleading assertions and representations about the Pex plumbing systems.

## COUNT V

### (NEGLIGENCE)

193.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

194.    Zurn was negligent in that it failed to use reasonable care when it created, marketed and sold its Pex plumbing system with brass crimp fittings.

195.    Zurn owed a duty to the Plaintiffs and proposed class members to provide a safe and quality product, and a duty to provide a product that would perform as it was advertised. Zurn breached those duties.

196.    That as a direct and proximate result of Zurn's negligence, lack of care, and other wrongful acts, the Plaintiffs and proposed class members sustained and will sustain damages.

197.    As a result of Zurn's negligence, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in their homes and structures a plumbing system that is defective.

198.    As a result of Zurn's negligence, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace brass crimp fittings, but also include, without limitation, consequential and incidental damages.

199.    That as a direct, proximate and foreseeable result of Zurn's negligence, the Plaintiffs and proposed class members have been damaged, in the aggregate, in an amount in excess of $50,000.

**COUNT VI**

**(NEGLIGENT FAILURE TO WARN)**

200.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

201.    As the manufacturer of a product, Zurn had a duty to provide instructions for proper use of its products.

202.    As the manufacturer of a product, Zurn had a duty to warn of foreseeable dangers inherent in the proper use of its products and also had a duty to warn of dangers associated with foreseeable misuse of its products.

203.    That to the extent Zurn claims in this lawsuit that the premature failures of its Pex plumbing brass crimp fittings was the result of characteristics of the water chemistry present in the Plaintiffs or the members of the putative class's water supply, Zurn failed to warn of those characteristics or dangers.

204.     That as a direct, proximate and foreseeable result of Zurn's failure to warn, Plaintiffs and proposed members of the class suffered damage.

205.     As a result of Zurn's failure to warn, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective.

206.     As a result of Zurn's failure to warn, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace brass crimp fittings, but also include, without limitation, consequential and incidental damages.

207.     That as a direct, proximate and foreseeable result of Zurn's failure to warn, the Plaintiffs and proposed class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT VII

### (NEGLIGENT MISREPRESENTATION)

208.     Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

209.     In making material misrepresentations of material facts regarding the characteristics and capabilities of its Pex plumbing system through its advertising and product information and through its internet website, Zurn knew or should have known it was misrepresenting material facts and that the Plaintiffs and putative class (and also Zurn's distributors and installers, and through them, the Plaintiffs and putative class), would be relying on Zurn's representations to their detriment and damage.

210.     In concealing material facts regarding the characteristics and capabilities of its Pex plumbing system, Zurn knew or should have known it was not disclosing material facts and

that the Plaintiffs and putative class (and also Zurn's distributors and installers, and through

them, the Plaintiffs and putative class), would be relying on Zurn's representations to their

detriment and damage.

211.    That as a direct, proximate and foreseeable result of Zurn's failure to fully

disclose material facts and Zurn's making misrepresentations of material fact, Plaintiffs and

proposed members of the class suffered damage.

212.    As a result of Zurn's negligence, the Plaintiffs and putative class have suffered

actual damages in that they have purchased and installed in homes and structures a plumbing

system that is defective.

213.    As a result of Zurn's misconduct, the Plaintiffs and putative class will suffer

damages that include not only the full cost to replace brass crimp fittings, but also include,

without limitation, consequential and incidental damages.

214.    That as a direct, proximate and foreseeable result of Zurn's negligent

misrepresentations, the Plaintiffs and proposed class members sustained damages, in the

aggregate, in excess of $50,000.00.

## COUNT VIII

## (FRAUD, MISREPRESENTATION AND CONCEALMENT)

215.    Plaintiffs and proposed class members reallege the foregoing paragraphs,

inclusive, as though fully set forth herein.

216.    Zurn's direct and indirect representations through its advertising and product

information and through its internet website regarding the quality, durability and efficiency of its

Pex plumbing system and brass crimp fittings were false and misleading, were material facts,

and were made willfully and intentionally with the intent to deceive.

217.     Zurn knew or should have known it was intentionally and fraudulently misrepresenting material facts and that the Plaintiffs and putative class (and also Zurn's distributors and installers, and through them, the Plaintiffs and putative class), would be relying on Zurn's representations to their detriment and damage.

218.     Zurn fraudulently concealed the nature of its Pex plumbing and brass crimp fitting system from the Plaintiffs and putative class, both in pre-sale communications and by its post-sale misconduct, as alleged above.

219.     As a result of Zurn's practices, the Plaintiffs and the putative class have suffered actual damages and that they have purchased and installed in homes and structures a plumbing system that is defective.

220.     As a result of Zurn's misconduct, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass crimp fittings, but also include, without limitation, consequential and incidental damages.

221.     That, as a direct, proximate and foreseeable result of Zurn's fraud and misrepresentations, the Plaintiffs and proposed class members have been damaged, in the aggregate, in an amount in excess of $50,000.

## COUNT IX

### (BREACH OF IMPLIED WARRANTY – MERCHANTABILITY)

222.     Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

223.     Zurn was at all relevant times a merchant with respect to its Pex plumbing system and that there was implied in the agreements between Zurn, Zurn's representatives and the Plaintiffs and putative class that such goods would be of merchantable quality.

224.     Zurn breached such warranties implied in the agreements and contracts by producing, marketing and selling a defective plumbing system.  As a result thereof, the Plaintiffs and the putative class did not receive goods as impliedly warranted by Zurn to be merchantable. The Plaintiffs and proposed class members are beneficiaries of the contracts.

225.     That as a direct, proximate and foreseeable cause of Zurn's breach of implied warranty, the Plaintiffs and proposed class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT X

### (BREACH OF IMPLIED WARRANTY –
### FITNESS FOR PARTICULAR PURPOSE)

226.     Plaintiffs and putative class members reallege foregoing paragraphs, inclusive, as though fully set forth herein.

227.     The Plaintiffs and putative class members relied upon Zurn's claimed skill, expertise and quality assurance to provide suitable goods for such purposes.

228.     At the time Zurn sold the goods to the Plaintiffs and the putative class, Zurn knew of the particular purpose for which the goods were required and knew that the Plaintiffs and proposed class members were relying on Zurn to provide goods suitable for their purpose, including all foreseeable variances in conditions and installation.  Accordingly, there was an implied warranty that the plumbing systems were fit for their particular purpose.

229.     Zurn breached such warranty implied in the agreements and contracts by providing defective plumbing systems.  The beneficiaries of the contracts, including the Plaintiffs and putative class members, did not receive goods as impliedly warranted by Zurn to be fit for their particular purpose.

230.     Proper presuit notification, to the extent required, has been provided.

231.    That as a direct, proximate and foreseeable result of Zurn's breach of the implied warranty, the Plaintiffs and proposed class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT XI

### (BREACH OF IMPLIED WARRANTY –
### COURSE OF DEALING/USAGE OF TRADE)

232.    Plaintiffs and putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

233.    It is the course of dealing and usage of trade in the plumbing industry to deliver brass fittings for plumbing systems that have sufficient specifications to avoid premature failure from stress corrosion cracking in residential applications.

234.    Zurn breached such warranty implied in the agreements and contracts by providing defective plumbing systems in violation of industry standards.

235.    Proper presuit notification, to the extent required, has been provided.

236.    That as a direct, proximate and foreseeable result of Zurn's breach of the implied warranty, the Plaintiffs and proposed class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT XII

### (BREACH OF EXPRESS WARRANTIES)

237.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

238.    On information and belief, and in the alternative, Zurn made certain express warranties to distributors relating to the goods it would provide.

239.    On information and belief, the express warranties provided by Zurn include warranties that it would provide properly designed plumbing systems and a 25-year warranty on such systems.

240.    Through distributors, the Plaintiffs and putative class members relied upon Zurn's express warranties.

241.    Zurn breached such express warranties by providing defective plumbing systems that have or are reasonably certain to fail well before the 25 year warranty or useful life of the system.

242.    That as a direct, proximate and foreseeable cause of Zurn's breach of express warranty, the Plaintiffs and proposed class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT XIII

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

243.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

244.    Plaintiffs and the putative class members are consumers within the meaning of 15 U.S.C. § 2301 et seq.

245.    As described herein, Zurn, as the warrantor within the meaning of 15 U.S.C. § 2301 et seq., committed several violations of state law, including breach of contract and breach of warranties.

246.    Plaintiffs and the proposed class members have sustained damages in excess of $50,000 by Zurn's breach of their warranties, implied warranties, and contracts, 15 U.S.C. § 2310(d)(1), and are entitled to recover reasonable attorney's fees and costs.

## COUNT XIV

### (DECLARATORY AND INJUNCTIVE RELIEF)

247.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

248.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and any applicable statute or rule providing for declaratory and / or injunctive relief, Plaintiffs and putative class members seek a declaratory judgment as follows:

      a.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the warranties fail of their essential purpose because the remaining remedies provided therein are inadequate and deprive the class of the benefit of the bargain of their purchases, because Zurn at the time of sale and thereafter concealed and suppressed that the system was defective, and because the provisions are otherwise unconscionable;

      b.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the same is unconscionable because the warranties do not provide adequate remedies because the defect in the plumbing system is latent and because the Plaintiffs lack sufficient bargaining power;

      c.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is unlawful and unenforceable;

      d.    To the extent Zurn alleges that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is barred by Zurn's failure to provide the alleged warranty disclaimers at the time of sale of the product;

      e.    Any releases obtained by Zurn, that did not otherwise provide full compensation to the putative class, were fraudulently induced, are unconscionable, were obtained by suppression and concealment, were obtained under duress by persons needing to repair their plumbing systems, and are null and void; and

      f.    To the extent Zurn has had an adverse adjudication against it arising from the subject matter of this Complaint, that the putative class may use

offensive collateral estoppel against Zurn for the rulings and determinations therein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

for relief against Zurn as follows:

1.  Certification of this plaintiff class and appointing Plaintiffs and their counsel to represent the class;

2.  Compensation for damages suffered by Plaintiffs and the proposed class members;

3.  Award of reasonable attorneys' fees and costs and disbursements incurred herein;

4.  Enjoin Zurn from engaging in any conduct in violation of statute;

5.  Enjoin Zurn from denying Pex warranty claims for failed brass crimp fittings;

5.  Declaring the rights and obligations of the parties as prayed for; and

6.  Such other and further relief the Court deems just and equitable.

Dated:  April 13, 2010                **LARSON KING, LLP**


By:   ___s/Shawn M. Raiter_____
          Shawn M. Raiter, #240424
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone:  (651) 312-6500

SWENSON LERVICK SYVERSON TROSVIG
JACOBSON, P.A.
Derek A. Trosvig
Box 787 – 710 Broadway
Alexandria, MN  56308
Telephone: (320) 763-3141

ZIMMERMAN REED, P.L.L.P.
Charles Zimmerman # 120054
Ronald S. Goldser #35932

651 Nicollet Mall, Suite 501
Minneapolis, MN 55401
Tel:     (612) 341-0400

Robert K. Shelquist (21310X)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2197
Telephone:     (612) 339-6900

Gary E. Mason
The Mason Law Firm, LLP
1225 19th Street NW, Suite 500
Washington, DC 20036
Telephone:     (202) 429-2290

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone:     (202) 789-3960

**ATTORNEYS FOR PLAINTIFFS AND
PUTATIVE CLASS**


### ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney

and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the party against whom

the allegations in this pleading are asserted.


s/Shawn M. Raiter
Shawn M. Raiter (#240424)

Lk1269443