# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re:   Zurn Pex Plumbing Products
          Liability Litigation

**MEMORANDUM OPINION
AND ORDER**
MDL No. 08-1958 ADM/RLE
Civ. No. 07-3652 ADM/RLE

_____

Shawn M. Raiter, Esq., Larson King, LLP, St. Paul, MN, J. Gordon Rudd, Esq., Zimmerman Reed, P.L.L.P., Minneapolis, MN, Robert K. Shelquist, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, Gary E. Mason, Esq., Mason LLP, Washington, D.C., Charles J. LaDuca, Esq., Cuneo Gilbert & LaDuca, LLP, Washington, D.C., on behalf of Plaintiffs.

James A. O'Neal, Esq., John P. Borger, Esq., Amy R. Freestone, Esq., David A. Snieg, Esq., Daniel J. Connolly, Esq., Faegre & Benson LLP, Minneapolis, MN, on behalf of Defendants.
_____

## I.  INTRODUCTION

On February 26, 2010, the undersigned United States District Judge heard oral argument on Plaintiffs' ("Plaintiffs") Motion for Class Certification [Docket No. 115] and Defendants Zurn Pex, Inc. and Zurn Industries, LLC's Motions to Exclude Portions of the Expert Testimony of Wallace Blischke and Roger Staehle [Docket No. 120].  Plaintiffs seek class certification of the following claims in the Second Amended Complaint [Docket No. 148]: violations of Minnesota consumer protection statutes (Counts I-IV), negligence (Count V), negligent failure-to-warn (Count VI), breach of implied warranty of merchantability (Count IX), and breach of express warranty (Count XII).  For the reasons set forth below, Plaintiffs' Motion is granted in part and denied in part and Defendants' Motions to Exclude are denied.

## II.  BACKGROUND

Defendant Zurn Pex, Inc. designs, manufactures, and sells plumbing products.  2d. Am.

Compl. ¶¶ 9, 20.  Defendant Zurn Industries, LLC is the great-grandparent of Zurn Pex, Inc.

Defendants Zurn Pex, Inc. and Zurn Industries, LLC are collectively referred to as "Zurn" or

"Defendants."

Historically, potable water plumbing systems used copper pipes.  Id. ¶ 51.  In the 1990s,

Zurn's predecessor, U.S. Brass Corporation, designed plumbing systems using polybutylene

plastic.  Id. ¶ 52; Pls'. Mem. in Supp. of Mot. for Minnesota Class Cert. [Docket No. 117].  After

a wave of litigation involving failed polybutylene plumbing systems, Zurn designed a cross-

linked polyethylene plumbing system, commonly referred to as "pex," as an alternative to

polybutylene systems and copper plumbing systems.  Id. ¶¶ 57-59.  The pex system purported to

be easier to install, cheaper, and longer lasting than copper plumbing systems.  Id. ¶ 62.

Zurn's pex plumbing system utilizes brass fittings and a crimp connection design.  Id. ¶

65.  The brass fittings are secured by the use of a special tool to crimp copper rings around the

outside of the pex tubing, creating a seal between the pex tubing and the brass fittings.  Id.

When the pex plumbing system is properly assembled, the crimp system design places stress on

the brass fittings.  Id. ¶ 66.  Because the brass fittings used in Zurn's pex plumbing system were

made from brass with a high zinc content, the fittings were claimed to be susceptible to

premature failings due to phenomena such as dezincification and stress-corrosion cracking.  Id.

¶¶ 68-69.

Plaintiffs are individuals who own a home with a Zurn pex plumbing system.  Id. ¶¶ 114,

118, 121, 123, 128.  Plaintiffs allege that defective fittings used in the pex system caused their

plumbing systems to leak resulting in damage to their properties.  Id. ¶ 27.  Plaintiffs allege Zurn

falsely represented the pex systems were of high quality, were reliable, and would last decades.

Id. ¶¶ 30, 31, 79-90.  Plaintiffs state that Zurn failed to adequately test the brass crimp fittings in their anticipated environments before marketing its product.  Id. ¶¶ 75-78.  Plaintiffs claim Zurn knew or should have known the brass crimp fittings were susceptible to premature failure from dezincification or stress corrosion and, therefore, knew or should have known these systems would fail.  Id. ¶¶ 69-70.  Plaintiffs assert pex systems are "doomed to leak within warranty" as they experience an unusually high failure rate.  Pls'. Mem. in Supp. of Class Cert. at 12.

In July 2007, Denise and Terry Cox filed the first class action lawsuit in Minnesota state court for damages to their home from failed pex plumbing.  Defendants removed the case to federal court.  Beverly Barnes and Brian Johnston filed a similar lawsuit in the District of North Dakota.  Several related lawsuits followed.  On August 21, 2008, the Judicial Panel on Multi-District Litigation determined that the pex plumbing cases involved common questions of fact, and that centralization of the cases in Minnesota was appropriate.  Transfer Order [Docket No. 1].  All Zurn Pex cases were transferred to the District of Minnesota for coordinated or consolidated pretrial proceedings and assigned to the undersigned United States District Judge.  Plaintiffs now move the Court to certify this case as a class action.

### III.  DISCUSSION

**A.  Motions to Exclude**[1]

Defendants move to exclude portions of the testimony of Plaintiffs' experts, Dr. Wallace Blischke ("Dr. Blischke") and Dr. Roger Staehle ("Dr. Staehle") under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).  Rule 702, which

---

[1] Because the testimony of Plaintiffs' experts is relevant to the disposition of Plaintiffs' Motion for Class Certification, Defendants' Motions to Strike are considered before the class certification motion.

governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

When evaluating the admissibility of expert testimony, a trial court serves as the "gatekeeper" to ensure the reliability and relevance of the expert testimony offered into evidence. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). A court must exclude expert testimony if it is "so fundamentally unreliable that it can offer no assistance to the jury." Meterlogic, Inc. v. KLT, Inc., 368 F.3d 1017, 1019 (8th Cir. 2004). A court may consider a number of non-exclusive factors when determining the reliability of expert testimony, including: (1) whether the theory or technique can (or has been) tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory has been generally accepted. Peitzmeier v. Hennessy v. Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996).

Plaintiffs urge that at the class certification stage, the scope of the inquiry to determine the admissibility of expert testimony should be limited to whether it "is so flawed it cannot provide any information as to whether the requisites of class certification have been met[.]" Pls.'s Mem. in Opp. to Zurn's Daubert Mot. Relating to Dr. Wallace Blischke [Docket No. 136] at 14-15. Defendants rely on a recent Seventh Circuit holding that when an expert's testimony is critical to class certification, the district court must conclusively rule on any challenge to the expert's qualifications or submissions before ruling on the class certification motion. Am.

Honda Motor Co., Inc. v. Allen, --- F.3d ---, 2010 WL 1332781 (7th Cir. 2010).

Several district courts in the Eighth Circuit have declined to engage in a full Daubert analysis at the class certification stage, considering only whether the expert testimony is helpful in determining whether the requisites of class certification have been met. Mehl v. Canadian Pacific Railway, 227 F.R.D. 505, 508-09 (D.N.D. 2005); In re Monosodium Glutamate Antitrust Litig. 205 F.R.D. 229, 234 (D. Minn. 2001); Midwestern Mach. v. Nw. Airlines, 211 F.R.D. 562, 565 (D. Minn. 2001). The Eighth Circuit does not appear to expressly require district courts to engage in a full Daubert inquiry at the class certification stage. See Blades v. Monsanto, 400 F.3d 562, 565 (8th Cir. 2005) ("[W]e believe the district court's findings as to the experts' disputes were properly limited to whether, if [plaintiffs'] basic allegations were true, common evidence would suffice, given the factual setting of the case, to show classwide injury."). Accordingly, the Daubert inquiry is tailored to the purpose for which the expert opinions are offered, e.g., Plaintiffs' claim that the action is capable of resolution on a class-wide basis and that the common defect in Zurn's brass fittings predominates over the class members' individual issues.

### 1. Dr. Blischke

Defendants do not challenge Dr. Blischke's expert qualifications to analyze warranty claims data. Instead, Defendants argue that Dr. Blischke's calculation of the mean time to failure has no basis in fact and that, because he is not a metallurgist or chemist, Dr. Blischke's calculation should be disregarded.

Dr. Blischke, a statistician, performed an analysis of Zurn's warranty claims data and estimated that millions of Zurn's brass fittings will fail within the twenty-five year warranty

period.  He concluded that the fittings have a mean time to failure of 40 years, which means

approximately half of the units will likely fail within 40 years and approximately half will fail

after.  Specifically, Defendants complain that to determine the mean time to failure, Dr. Blischke

simply assumed the forty year number, as opposed to actually calculating it, and that this

assumption is inconsistent with Zurn's warranty claims data.  Defendants further argue that Dr.

Blischke admits that he cannot recall performing another reliability analysis where he assumed

the mean time to failure rather than calculating it.  Raiter Aff. [Docket No. 137] in Supp. of Pls.'

Mem. in Opp. to Zurn's Daubert Mot. Relating to Dr. Wallace Blischke, Ex. C at 18.

Defendants' challenges are insufficient to exclude Dr. Blischke's testimony at this stage

of the litigation.  At his deposition, Dr. Blischke conceded that the usual statistical technique for

obtaining the mean time to failure is to calculate it.  Id. at 77, 149.  But, Dr. Blischke also

testified that where, as here, the data is insufficient to calculate the value, estimating a value is a

generally accepted methodology in the field.  Id. at 149-50.  In addition, the 40 year estimate was

based on a number of factors, including Zurn's own flow testing parameters, the testimony of

other experts, and general information about the average lifetime of a plumbing system.  Id. at

121-22, 126-28.  Dr. Blischke's analysis was circumscribed by the availability of warranty

claims data.  However, as merits discovery unfolds and more information becomes available, Dr.

Blischke's 40 year estimate for the mean time to failure may or may not be admissible.  The

Court has considered all expert testimony offered by both sides in support of or in opposition to

class certification and has given such testimony proper weight.  Based on the available

information for class certification purposes, Dr. Blischke's expert opinion of a 40 year mean

time to failure will not be stricken.

Turning to Defendants' argument that Dr. Blischke's opinion should be disregarded because he is not a metallurgist or chemist, and has little to no practical experience in plumbing products, Rule 702 establishes a background in one of the five areas of qualification - "knowledge, skill, experience, training, or education" - can be sufficient to qualify an expert. Dr. Blischke clearly possesses qualifications in some, if not all, of the five identified areas. "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006). While Dr. Blischke's lack of practical experience in plumbing products may affect the weight of his testimony, it does not preclude his testimony on the mean time to failure.

### 2. Dr. Staehle

Defendants do not challenge Dr. Staehle's qualifications as an expert, but rather argue that he assumed an input factor in his testing that would result in stress corrosion cracking. Dr. Staehle conducted an initial round of testing known as bent beam testing, in which none of the crimped fittings cracked. He then conducted a second round of testing known as the U-bend test of brass specimens from Zurn's fittings. Defendants aver that the reliability of Dr. Staehle's U-bend testing was undermined by his use of an artificially-inflated level of strain. In particular, Defendants contest the correctness of Dr. Staehle's calculation of plastic strain. This is important, Defendants argue, because overstating the strain placed on the fittings due to the crimp yields test results that are unreliable. Accordingly, if the data used is incorrect, the determination regarding stress corrosion cracking necessarily will be flawed as well.

Defendants do not argue that U-bend testing is unreliable. Instead, Defendants argue that

the specific number that Dr. Staehle used to estimate strain was wrong. Therefore, Defendants

dispute the accuracy of Dr. Staehle's results, not the general scientific validity of his methods.

The identification of inaccuracies in generally reliable scientific evidence is precisely the

purpose of cross-examination. See generally Daubert, 509 U.S. at 596. The results of Dr.

Staehle's U-bend testing lend support for Plaintiffs' claim that stress corrosion cracking is an

inevitable result of Zurn's brass fittings. The Court has weighed and reviewed the expert

opinions offered by both parties in determining whether class certification is warranted. At this

stage of the proceedings, the Court declines to strike Dr. Staehle's testimony.

**B. Motion for Class Certification**

### 1. Class Certification Standard

Plaintiffs seek certification of the following class:[2]

> All persons and entities that own a structure located within the State
> of Minnesota that contains a Zurn Pex plumbing system with brass
> crimp fittings. The proposed class includes, without limitation, all
> such persons or entities who contacted Zurn or its representatives
> about their Zurn Pex plumbing system and were denied or partially
> denied warranty coverage for failure of the Zurn Pex plumbing
> system based on a claim that "corrosion" was not covered by the
> warranty or that other alleged warranty limitations applied.

Pls.' Mem. in Supp. of Class. Cert. at 2-3. Rule 23 of the Federal Rules of Civil Procedure

governs a district court's consideration of a motion for class certification. The class action

serves to conserve the resources of the court and the parties by permitting an issue that may

---

[2] In their Second Amended Complaint, Plaintiffs set forth two alternative proposed class definitions. However, in Plaintiffs' Memorandum in Support of Class Certification, they confine their discussion to the above class. Therefore, the Court limits its discussion to the outlined class.

affect every class member to be litigated in an economical fashion. <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 155 (1982). The Plaintiff bears the burden of demonstrating that the requirements of Rule 23 are satisfied. <u>Coleman v. Watt</u>, 40 F.3d 255, 259 (8th Cir. 1994). Decisions on whether to certify a class action are entrusted to the discretion of the district court. <u>See</u> <u>id</u>. For class certification to be appropriate, a plaintiff must first establish the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Class certification is proper when (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the class (adequacy). <u>Id.</u> Upon satisfying the four requirements of Rule 23(a), a party seeking class certification must also demonstrate that the action falls within one of the three categories of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(a); <u>In re St. Jude Med., Inc.</u>, 425 F.3d 1116, 1119 (8th Cir. 2005). Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which permits a class action to be maintained if two requirements are met: "Common questions of law or fact must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" <u>Amchen Prods., Inc. v. Windsor</u>, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)).

When considering a motion for class certification, the court takes the substantive allegations in the plaintiff's complaint as true, as the issue is resolved, not by an investigation into the merits of the claim, but rather by consideration of the class certification criteria.

Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 549 (D. Minn. 1999); Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995). Nonetheless, a motion for class certification "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (citation omitted). Only after a rigorous analysis of the proposed class and the requirements of Rule 23 may a court grant class certification. See Gen. Tel. Co. of the Southwest, 457 U.S. 147, 161 (1982).

**2. Scope of the Class**

Before addressing the Rule 23(c) and Rule 23(b) requirements, there are two threshold issues. First, Defendants argue that the proposed class is overly broad because it includes persons who have not suffered or may never suffer any injury. Defendants urge that every class member must have suffered an actual injury to have a presently-existing, justiciable claim against them. Plaintiffs respond that it is not necessary for a person's home to have experienced water damage; the only prerequisite is that the class member own a home with a Zurn pex plumbing system. Because resolution of this dispute varies with respect to the type of claim, the scope of the class is addressed separately with respect to each claim.

Second, Zurn argues the class is unascertainable because it includes individuals who have a Zurn pex system but may not have used Zurn's brass crimp fittings to connect the piping. The Court agrees. However, this overbreadth in the proposed class definition is not fatal to certification. The Court has the authority to redefine a proposed class in such a way as to allow the class action to be maintained. Lamb v. Hamblin, 57 F.R.D. 58, 60-61 (D. Minn. 1972). Accordingly, the Court redefines the proposed class as follows:

10

All persons and entities that own a structure located within the State of Minnesota that contains a Zurn Pex plumbing system with Zurn brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

### 3. Rule 23(a) Factors

#### a. Numerosity

The parties do not dispute that the class is so numerous that joinder of all members is impracticable. See Fed. R. Civ. P. 23(a)(1). The number of Zurn brass fittings that are known to have failed exceeds 800. Pls.' Memo. in Supp. of Class Cert. at 24. Plaintiffs project an early estimate of potential class members at 50,000. Id. Given the large number of purported class members, the Court finds joinder to be impracticable, fulfilling the numerosity requirement.

#### b. Commonality

The second requirement is that there be "questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2). It is not necessary that all questions of law and fact are common to the class, rather the commonality requirement may be met where, for example, "the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." Paxton v. Union Nat'l Bank, 688 F.2d 551, 561 (8th Cir. 1982) (quotation omitted). In most cases, the commonality requirement is easily satisfied because it "requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members." Egge v. Healthspan Servs. Co., 208 F.R.D. 265, 268 (D. Minn. 2002) (quoting

<u>Lockwood Motors, Inc., v. General Motors Corp.</u>, 162 F.R.D. 569, 575 (D. Minn. 1995)); <u>see also</u> <u>Jancik v. Cavalry Portfolio Servs., LLC</u>, Civ. No. 06-3104, 2007 WL 1994026 at *5 (D. Minn. July 3, 2007).

The common legal questions are whether the Zurn pex plumbing system is defective, what Zurn knew about the allegedly defective brass fittings, and whether these facts give rise to claims for negligence, negligent failure to warn, breach of express warranty, and breach of implied warranty. These facts are constant among all class members. The proposed class definition unites plaintiffs with a common factual circumstance, namely, individuals who own property with an allegedly defective Zurn pex plumbing system. Accordingly, the putative class meets the commonality requirement. Defendants argue that the commonality requirement is essentially subsumed by Rule 23(b)(3)'s more stringent requirement that questions common to the class predominate over other questions. However, a proposed class may satisfy the commonality requirement but still fail under the "far more demanding" predominance requirement of Rule 23(b)(3). <u>Amchem Prods.</u>, 521 U.S. at 624. Accordingly, the Court finds the commonality requirement of Rule 23(a)(2) to be satisfied.

### c. Typicality

"[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Gen. Tel. Co. of the Southwest</u>, 457 U.S. at 156 (citation omitted). "This requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." <u>Paxton</u>, 688 F.2d at 561-62. The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." <u>DeBoer v.</u>

Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995).

Like the proposed class members, the representative Plaintiffs in this action each own property that contains a Zurn pex plumbing system. The claims of the putative class arise from this common fact. Defendants argue that the named Plaintiffs' damages vary and determining damages will be very difficult, requiring consideration of the amount of damage to each Plaintiff and the appropriate reimbursement costs.

While the Court may have to make individualized determinations regarding damages, this alone does not preclude certification. Midwestern Mach. 211 F.R.D. at 571 (D. Minn. 2001); In re Workers' Compensation, 130 F.R.D. 99, 110 (D. Minn. 1990). "Rule 23 explicitly envisions class actions with such individualized damage determinations." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 428 (4th Cir. 2003) (citing Fed. R. Civ. P. 23 advisory committee's note and commenting that Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with "the members of the class . . . thereafter . . . required to come in individually and prove the amounts of their respective claims.").

Defendants next argument is that the named representatives who allege injury do not, and cannot, represent the interests of proposed class members who have suffered no injury. Thus, Defendants' argument continues, their claims are not typical of the class and they will not adequately represent the class. However, as discussed in greater detail below, the interests of the named representatives are coextensive with that of the class with respect to the breach of warranty claim.[3] The named representatives cannot represent the interests of the proposed class

_____

[3] See infra III.4.a.2.a.

who have suffered no injury as to the negligence and negligent failure-to-warn claims.[4]

### d. Adequacy

The focus of the adequacy requirement of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interest of the class through qualified counsel. Paxton, 688 F.2d at 562-63 (8th Cir. 1982). Defendants do not dispute that Plaintiffs' counsel are qualified, but argues that the named Plaintiffs are not adequate representatives. Defendants' argument on this issue restates the arguments asserted to oppose a finding of typicality. Because the Court has rejected those arguments, and in the absence of any new arguments by Defendants, the adequacy requirement is also satisfied. In addition, there is no evidence that the named representatives would not vigorously litigate this claim on behalf of all class members.

### 4. Rule 23(b)(3) Factors

The final inquiry is whether class certification is appropriate under Rule 23(b)(3). In contrast to actions under Rules 23(b)(1) and (b)(2), Rule 23(b)(3) is designed for cases in which class action treatment is not clearly called for but "may nevertheless be convenient and desirable." Amchem Prods., 521 U.S. at 615. As noted above, to qualify for certification under Rule 23(b)(3), the questions of law or fact common to the class must predominate over individual questions and the class action device must be superior to other available methods for fair and efficient adjudication of the case. Fed. R. Civ. P. 23(b)(3).

### a. Predominance

The question of predominance constitutes the core dispute between the parties. "The

---

[4] See infra III.4.a.3.a.

Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623. In examining this requirement, the Court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted). "This necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims," and the predominance standard is satisfied only if those elements "can be proven on a systematic, class-wide basis." Id. at 569 (citations omitted).

Defendants argue class certification is improper because individual issues abound. Defs'. Mot. in Opp. to Class. Cert. [Docket No. 126] at 27-28. Specifically, Defendants contend that differences in water quality and installation techniques are necessarily individualized inquiries. With respect to water quality, Defendants state,

> [F]or each claim, the fact-finder must determine whether the failure was due to corrosive water conditions. That issue will vary from installation to installation. Was a homeowner advised by his well company to use orthophosphates for corrosion inhibitors, but failed to do it? Was a plumber oblivious to knowledge of other failures in the area? Did a plumber disregard specific recommendations not to use brass fittings in particular situations? Did a water softener manufacturer adequately warn of the effects of its product on corrosivity of water? Water quality is at the heart of this case, and the issues it raises cannot be litigated on a class-wide basis.

Defs'. Mot. in Opp. to Class Cert. at 40-41 (footnote omitted). With respect to installation, Defendants state:

> The potential for installation error presents another cause for failure and hence another individualized issue. Plumbers frequently fail to

15

follow the manufacturer's installation instructions. When proper installation techniques are not followed, the failure of the PEX tube or fittings is not the responsibility of the tube and fitting manufacturer. The failure is directly related to the installation , and is the responsibility of the installation contractor.

Id. at 41.

In response, Plaintiffs argue that Defendants' attempt to defeat class certification by asserting predominance of individual water quality issues and installation practices fails because these issues are not factors in Plaintiffs' theory of the case. According to Plaintiffs, the brass crimp fittings used in the pex plumbing system suffer from an inherent design and manufacturing defect and are unsuitable as a plumbing product. Plaintiffs present evidence that because Defendants failed to adequately test the fittings, they are "substantially certain to fail within the 25 year express warranty provided by Zurn and/or the useful life of the fittings." 2d. Am. Compl. ¶ 73.

### 1. Consumer Protection Claims

In the briefing, Plaintiffs characterize their claims under Minnesota's Consumer Fraud, Unlawful Trade Practices, Deceptive Trade Practices, and False Advertising Acts as consumer protection claims, and Plaintiffs address predominance as it relates to those claims in one section. See Pls.' Mot. in Supp. of Class Cert. at 35-38; Pls.' Rep. in Supp. of Mot. for Class Cert. at 12-13. The Second Amended Complaint confirms that the claims are similar in that they sound in fraud and are based on alleged untrue statements of material fact, misrepresentations, material omissions, and other fraudulent and deceptive conduct. See Sec. Am. Compl. ¶¶ 163-67, 170-75, 178-83, 186-91.

Defendants argue that to prove their claims under Minnesota's consumer protection

16

statutes, Plaintiffs must prove, among other elements, that they received the alleged

misrepresentations and relied on them.  Defs.' Mot. in Opp. to Class Cert. at 46-47.  Defendants

support their argument with the Eighth Circuit's conclusion in In re St. Jude Med., Inc., 522 F.3d

836 (8th Cir. 2008) ("St. Jude II").  In that case, the court cautioned that "[b]ecause proof often

varies among individuals concerning what representations were received, and the degree to

which individual persons relied on the representations, fraud cases often are unsuitable for class

treatment." Id. at 838.  The court in St. Jude II found the issues of receipt and reliance on

alleged misrepresentations to be particularly problematic to class treatment of fraud-based claims

under Minnesota's consumer protection laws.  Id.

Plaintiffs counter that St. Jude II addressed only affirmative misrepresentations that were

made and did not discuss material omissions.  In this case, Plaintiffs' claims are based in part on

alleged misrepresentations but also on Defendants' uniform failure to disclose to any and all

members of the proposed class, facts which were material in the sense that no reasonable buyer

would have purchased and installed Zurn's pex plumbing system had the omitted facts been

disclosed.  Therefore, although individual questions may exist regarding what representations

each class member received and each member's reliance on those representations, there are no

individual issues regarding the alleged omission of material information, which is an essential

aspect of all Plaintiffs' claims.

Another Minnesota district court recently rejected this same argument.  In In re St. Jude

Medical Inc. Silzone Heart Valves Products Liability, MDL No. 01-1396, 2009 WL 1789376 (D.

Minn. June 23, 2009) ("St. Jude III"), the court explained:

> While the [Eighth] [C]ircuit's analysis [in St. Jude II] focused more
> consistently on St. Jude's alleged misrepresentations, the fact that St.

Jude's alleged misrepresentations and omissions were not discussed separately was not unusual in light of the similarities between these allegations. Indeed, in many cases, plaintiffs first made omission allegations contending that St. Jude omitted test information that raised questions about the quality of the disputed valves, and then added separate misrepresentation claims challenging St. Jude's assertions that the test results had been positive. In those circumstances, the omission and misrepresentations claims were effectively mirror images, and it is unsurprising that the circuit elected to discuss them together.

Id. at *3 (citations omitted).

Similarly here, Plaintiffs' allegations of omissions, i.e., that Defendants failed to disclose material information about the quality of the fittings, is essentially a mirror image of Plaintiffs' claims that Defendants misrepresented the quality of its fittings. In Tuttle v. Lorillard Tobacco Co., the Eighth Circuit required that plaintiffs provide proof of reliance in omissions cases. 377 F.3d 917, 927 (8th Cir. 2004) ("Although Mrs. Tuttle need not present direct evidence of Tuttle's individual reliance, Mrs. Tuttle must establish some proof that the conduct of the smokeless tobacco manufacturers . . . in failing to warn caused consumers to continue using smokeless tobacco and to sustain physical injury in reliance on the defendants' conduct.").

Plaintiffs' assertion in this case that a reasonable consumer would have considered the omitted information essential in making the decision to purchase would likely be sufficient to support a claim on behalf of each class member, and if it could be somehow demonstrated that a class of plaintiffs failed to receive the same material omission, the claim would seemingly further the goals of a class action lawsuit. See St. Jude III, at *4. But the Eighth Circuit's mandate in St. Jude II controls here. That Defendants allegedly omitted material information rather than made affirmative misrepresentations is a distinction without a difference in this

18

context.  Since proof of reliance will likely vary among class members, and since <u>St. Jude II</u> confirms that Defendants are entitled to present individualized defenses to reliance, Plaintiffs have failed to show that the reliance component of their consumer protection claims can be proven by common evidence.  Accordingly, class certification as to Plaintiffs' consumer protection claims is denied.[5]

## 2. Warranty Claims

Plaintiffs allege that Defendants breached the implied warranty of merchantability and the express warranty.  Plaintiffs assert that common issues of law and fact predominate on the warranty claims.

A claim for breach of warranty requires a plaintiff to show (1) the existence of a warranty, (2) breach of the warranty, and (3) a causal link between the breach and the alleged harm.  <u>Peterson v. Bendix Home Systems</u>, 318 N.W.2d 50, 52-53 (Minn. 1982).  To recover for breach of the implied warranty of merchantability, a plaintiff must demonstrate that a product is not suitable "for the ordinary purposes for which such goods are used."  Minn. Stat. § 336.2-314(2)(c).

Plaintiffs argue that predominance is readily satisfied in cases involving express written warranties, with little substantive differences among them, applicable to all class members, and whether that warranty was uniformly breached by delivering defective plumbing systems.

Defendants respond that the breach of warranty claims raise individual issues that defeat predominance.  Defendants first argue that Plaintiffs' breach of warranty claim requires proximate causation to be proven with respect to each class member, an unmanageable task

---

[5] Given the denial of class treatment to the consumer protection claims, there is no need to address the appropriate scope of the class.

given the varying circumstances of any given product failure. Defs.' Mot. in Opp. to Class Cert. at 31. Defendants contend that before a Plaintiff recovers for property damage caused by leaking water, he or she would have to prove individual causation: the water damage resulted from Zurn's brass crimp fitting failure, which leaked because of a defect and not for some other reason (i.e., because of corrosive water quality in that Plaintiff's home or improper installation). Defendants further contend that if it can be proven that an individual class member's property damage resulted from corrosive water or installation error, his/her damages would not be covered under Zurn's warranty. The warranty states in relevant part:

> Subject to the terms and conditions of this Limited Warranty, Zurn PEX Plumbing and Radiant Heating System warrants only to the owner of the real property when installed by licensed professional contractors or authorized distributors who purchase and properly install in a potable plumbing system and/or radiant heating system .
> . .
> . . .
>
> This warranty does not apply and you do not have a right of reimbursement if the failure or resulting damage is caused by . . .
> (V) exposure to harmful, unauthorized, or unanticipated chemicals or substances or corrosive water conditions; . . .
> (VIII) damage or wear from abnormal operating conditions, accident, abuse, misuse, or unauthorized alterations or repair.

Pls.' Ex. 16 (Zurn Pex Plumbing and Radiant Heating Systems Professional Installation Limited Warranty).

Because Zurn's warranty specifically excludes failures due to improper installation and corrosive water quality, individual questions of proximate cause may exist as to class members whose Zurn's brass crimp fittings have already failed and who have suffered resulting property

damage.[6]

However, two reasons militate against finding that individual issues predominate with respect to the warranty claims. First, Plaintiffs contend that Zurn's "corrosive water conditions" exclusion is vague, unconscionable, and unenforceable. If Plaintiffs prevail on this threshold legal argument, individually litigating the issue of corrosive water for each class member will be unnecessary.

Second, the number of class members who have not yet suffered property damage, but rather seek replacement fittings, is far greater than those who have already suffered damage.[7] As to these individuals, common questions predominate. As this Court recently explained: "for a breach of warranty claim, the breach occurs and thus the claim accrues when tender of delivery of a nonconforming good is made or, if the warranty explicitly extends to future performance, when discovery of the breach is or should have been made." McGregor v. Uponor, Inc., Civil No. 09-1136, 2010 WL 55985, * 7 (D. Minn. Jan. 4, 2010) (citing In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 155 F.Supp.2d 1069, 1086, 1099-1100 (S.D. Ind. 2001)).

Plaintiffs allege, and intend to prove by expert testimony, that Zurn's brass crimp fittings suffer from a uniform, inherent design and manufacturing defect regardless of the varying circumstances raised by Zurn. If Plaintiffs can ultimately prove that their fittings were not merchantable *at the time of purchase*, evidence regarding differences in water quality or

---

[6] By this, the Court does not imply that individual proximate cause determinations predominate, only that they *may* exist. Further discussion of Defendants' argument on proximate cause is included in the section below entitled "Negligence claims."

[7] Plaintiffs state that, in Minnesota, there have been 884 failures due to stress corrosion cracking between 2001 and 2008. Plaintiffs estimate the number of Minnesotans who own homes with a Zurn pex plumbing system to be 50,000.

improper installation is not relevant to Plaintiffs' breach of warranty claim.

Individual issues of proximate cause may exist as to the much smaller number of Plaintiffs whose fittings have already leaked and, thus, seek damages to their property, not solely replacement of allegedly nonconforming goods. But again, if Plaintiffs can prove their theory of the case (that Zurn's brass fittings are inherently defective and will fail during its useful life), individual proximate cause determinations will not be relevant for the vast majority of class members who have not suffered property damage and seek only replacement of a nonconforming product. Plaintiffs intend to prove by expert testimony that Zurn's brass fittings are inherently defective and will fail during its useful life irrespective of water conditions or installation problems. Defendants intend to prove that the brass crimp fitting is not inherently defective and does not suffer from a manufacturing defect. Litigating this issue numerous times in different proceedings is neither practicable nor reasonable.

Defendants next argue that Plaintiffs' claim for breach of warranty fails on the same rationale that the consumer protection claims fail: individual issues predominate because each class member will have to prove that he or she received the relevant representations in the warranty and relied on them prior to purchasing the plumbing system. Defendants cite Hendricks v. Callahan, 972 F.2d 190 (8th Cir. 1992) for the proposition that Plaintiffs must show some form of reliance on the warranty to succeed on their breach of warranty claim. However, Hendricks did not involve a transaction in goods. Under Minnesota law, an express warranty may be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or "[a]ny description of the goods which is made part of the basis of the bargain." Minn. Stat. § 336.2-313(1)(a)-(b). As

Hendricks discussed, § 336.2-313 replaced "§ 512.12 of the [Minnesota] statutes and omitted the requirement that a buyer 'rely' on an express warranty." Id. at 193. The Uniform Commercial Code comment to § 336.2-313 provides: "In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." In Drobnak v. Andersen Corp., the court was presented with this same issue and concluded that reliance is not a necessary element of a breach of warranty claim. Civil No. 07-2249, 2008 WL 80632, at *7 (D. Minn. Jan. 8, 2008) (declining to dismiss a breach of warranty claim for failure to plead reliance). In addition, Minnesota specifically extends express and implied warranties to third-party beneficiaries. Minnesota statute section 336.2-318 states that "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." Minn. Stat. § 336.2-318 (2010). Any beneficiary of warranty may "bring a direct action for breach of warranty against the seller whose warranty extends to him." Id. Zurn's warranty extends to the "owner" of the real property with a Zurn pex system installed. Pls.' Ex. 16. Therefore, each class member will not be required to prove that he or she relied on the warranty in order to succeed on the breach of warranty claim.

Defendants' final argument is that different versions of the warranty existed over the years for the pex plumbing system and determining which version applies - the ten year or twenty-five year warranty - requires individualized inquiries. Defendants do not appear to argue that there are more than two distinct durational warranties. To the extent that different class members have warranties of different durations, a proposition disputed by Plaintiffs, the Court

may create subclasses as necessary.[8]

## a. Scope of the Class

On the breach of warranty claim, Defendants' argument that the scope of the class is overly broad because it includes those who have not suffered any injury is unconvincing. As noted above, for a breach of warranty claim based on the delivery of a nonconforming product, Plaintiffs need only allege and prove that the brass fittings are defective and do not conform to the warranty. They are not required to allege and prove a manifestation of that defect. See McGregor, 2010 WL 55985 at * 7; In re Bridgestone/Firestone, Inc., 155 F.Supp.2d at 1086, 1099-1100. Thus, the allegation that the brass fittings did not conform to the warranty and Zurn denied warranty claims is sufficient to show that Plaintiffs have suffered an injury for purposes of their warranty claims. Accordingly, the Court will certify the breach of express warranty and breach of implied warranty of merchantability class as follows:

> All persons and entities that own a structure located within the State of Minnesota that contains a Zurn Pex plumbing system with Zurn brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

## 3. Negligence claims

Negligent failure-to-warn claims are premised on a theory of negligence. Westerberg v. Sch. Dist. No. 792, 148 N.W.2d 312, 316-18 (Minn. 1967). In products liability cases, plaintiffs

---

[8] Rule 23(c)(4) gives the court authority to divide a proposed class into subclasses. See Fed. R. Civ. P. 23(c)(4).

alleging negligent defective design must demonstrate the (1) product was in a defective condition unreasonably dangerous for its intended use, (2) the defect existed when the product left the manufacturer's control, and (3) the defect proximately caused the plaintiff's injuries. Johnson v. Zimmer, Inc., No. Civ. 02-1328, 2004 WL 742038 (D. Minn. Mar. 31, 2004) (citing Patton v. Newmar Corp., 538 N.W. 2d 116, 119-20 (Minn. 1995)). In a products liability suit, to state a cause of action for failure to warn, the question of whether a duty to warn of a danger in a product exists is a matter of law. Germann v. F.L. Smithe Mach. Co., 395 N.W.2d 922, 924 (Minn. 1986). Whether a defendant has a duty to warn is dependent on the foreseeability of the injury. Westerberg, 148 N.W.2d at 317.

Defendants argue that the question of foreseeability is necessarily an individualized inquiry because Plaintiffs' negligence claims are based on Zurn's warranty claims experience and the assertion that Zurn should have acted differently after it had knowledge that its brass crimp fittings were failing prematurely. Plaintiffs rebut that argument by asserting that Zurn knew or should have known that its design and choice of brass alloy made the fittings susceptible to premature failure. 2d. Am. Compl. ¶¶ 68-73. Plaintiffs further allege that Zurn failed to adequately test the fittings before selling them to the public. Id. ¶ 75. Thus, the issue of foreseeability turns on what Zurn knew or should have known during the design and manufacturing phase of the product, not on what Zurn did or did not do after it discovered that fittings were failing in the field. What Zurn knew or should have known at the time of design, manufacture, and sale is common to the class.

Defendants renew their argument that proximate cause must be proven as to each class member and that individual issues regarding water quality and improper installation exist.

Plaintiffs respond that the fittings of class members who have already suffered failure occurred in homes where "no obvious indicators of potent [stress corrosion cracking] environments" exist and that Defendants have not produced any credible evidence that installation errors may be a cause. Pls.' Mem. in Supp. of Class Cert. at 31 citing Ex. 41, p. 6; Pls.' Reply Mem. in Supp. of Class Cert. at 1-2. Therefore, Plaintiffs argue that individual water quality and installation issues are simply an attempt by Defendants to distract from what they contend is the only cause of failure: Zurn's inherently defective product. A fact question does exist as to whether the failures are due to a single cause or multiple causes. If Plaintiffs can prove that the crimp fittings suffer from a uniform, inherent design and manufacturing defect, and that the defect is the only cause of failure in the majority of the cases, then proximate cause will not involve predominately individual determinations, and resolution of that issue would be common the class. For class certification purposes, the Court is convinced that Plaintiffs have adduced sufficient evidence to support their theory of the case.

Plaintiffs may or may not ultimately prove their negligence claims, but the facts they offer to prove their theory will be largely uniform for all class members. The central liability issues will pivot around what and when Zurn knew about the defects. The resolution of these common issues will resolve a significant portion of the case for all class members. The question of liability does not require the specific individually tailored examinations proposed by Zurn. That there may be some individualized issues does not outweigh the number, significance, and predominance of the common questions raised here. The Court finds that Plaintiffs have met the predominance requirement for their negligence claims.

### a. Scope of the Class

As discussed above, Defendants argue that the proposed class is overly broad because it includes persons who have not suffered or may never suffer any injury. Plaintiffs respond that the appropriate inquiry is not the strength of each class member's individual claim, but whether Plaintiffs, as a class, have common complaints. Although Plaintiffs need not conclusively prove their claim at this stage of the litigation, they must still properly allege and support their claim.

In Minnesota, the essential elements of a negligence claim are: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of duty was the proximate cause of the injury. Lubbers v. Anderson, 539 N.W. 2d 398, 401 (Minn. 1995). Plaintiffs concede the proposed class includes individuals whose fittings have not yet failed and thus who have not suffered any property damage. Pls.' Reply Mem. Plaintiffs argue, however, that the specific quantum of damage can be addressed later on the basis of common evidence. However, it is not Plaintiffs' inability to quantify damages that makes their negligence claim unsuitable for class treatment for the proposed class. To state a negligence claim in Minnesota, Plaintiffs must allege a cognizable injury and a causal connection between that injury and Defendants' conduct. See Briehl v. Gen. Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999) ("liability does not exist in a vacuum; there must be a showing of some damage. . . . It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."). The proposed class members own a Zurn pex plumbing system in which the alleged defect has not yet manifested and, thus, have not suffered an injury to support a legally cognizable negligence claim.

Plaintiffs argue that they "need only establish that future harm or injury to property is

reasonably certain to occur." Pls.' Reply Mem. in Supp. of Class Cert. at 13 (citing 4A

Minnesota Practice, CIV JIG 90.10 (2009); Pietrzak v. Eggen, 295 N.W.2d 504, 507 (Minn.

1980)). Plaintiffs are correct that a person may recover damages for future harm, but in order to

do so, the future harm must result from a present injury that indicates an increased risk of harm

that is reasonably certain to occur in the future. See Dunshee v. Douglas, 255 N.W.2d 42, 47

(Minn. 1977); Bryson v. Pillsbury Co., 573 N.W.2d 718, 721 (Minn. App. 1998). Alone,

however, "the threat of future harm, not yet realized, will not satisfy the damage requirement."

Reliance Ins. Co. v. Arneson, 322 N.W.2d 604, 607 (Minn. 1982). Because some of the

members of the proposed class have not suffered a present injury, the damages element of these

Plaintiffs' negligence claims is not satisfied. Accordingly, the Court will certify the negligence

class as follows:

> All persons and entities that own a structure located within the State
> of Minnesota that contains a Zurn Pex plumbing system with Zurn
> brass crimp fittings and who have suffered damage to their property
> caused by a failure in Zurn's brass crimp fittings. The proposed class
> includes, without limitation, all such persons or entities who
> contacted Zurn or its representatives about their Zurn Pex plumbing
> system and were denied or partially denied warranty coverage for
> failure of the Zurn Pex plumbing system based on a claim that
> "corrosion" was not covered by the warranty or that other alleged
> warranty limitations applied.

### b. Superiority

Federal Rule of Civil Procedure 23(b)(3) also requires a court to find "that a class action

is superior to other available methods for the fair and efficient adjudication of the controversy."

Rule 23(b)(3) provides that the superiority analysis consider the following factors:

> (A)    the interest of members of the class in individually
> controlling the prosecution or defense of separate

actions;

  (B)  the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

  (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

  (D)  the difficulties likely to be encountered in the management of a class action.

With respect to the first factor, generally speaking, the members of the class do not appear interested in individually controlling separate actions. Plaintiffs assert that the size of each individual class member's loss is too small to warrant such individualized attention. In addition, Plaintiffs state that since any individual class member's recovery will be relatively modest, requiring each class member to bring an individual lawsuit against Zurn for damages is not economically feasible. As a result, Plaintiffs argue a class action is necessary so that class members can effectively redress their injuries.

Regarding the second factor, the extent of litigation concerning this controversy that has been commenced by or against members of this class is minimal. Only a small number of warranty claims have escalated into litigation, and those claims that are being litigated are brought by subrogated insurance companies rather than individual class members.

As to the third factor, concentrating this litigation will provide a remedy for those class members who might not otherwise seek a remedy due to the inherent difficulties associated with litigation. In addition, having one forum will avoid duplicative results and the potential for inconsistent judgments.

With respect to the fourth factor, the Court has found that common issues predominate

over individualized questions, and therefore class-wide methods of proof are appropriate.  At this point in the litigation, there is no reason to believe that Plaintiffs' proposed class action will be unmanageable.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants' Motions to Exclude Portions of the Expert Testimony of Wallace Blischke and Roger Staehle [Docket No. 120] is **DENIED**;

2.  Plaintiffs' Motion for Class Certification [Docket No. 115] is **GRANTED IN PART** and **DENIED IN PART**;

3.  As to the consumer protection claims, class certification is **DENIED**;

4.  As to the breach of express warranty and breach of implied warranty of merchantability claims, a class is certified as: all persons and entities that own a structure located within the State of Minnesota that contains a Zurn Pex plumbing system with Zurn brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

5.  As to the negligence and negligent failure-to-warn claims, a class is certified as: all persons and entities that own a structure located within the State of Minnesota

that contains a Zurn Pex plumbing system with Zurn brass crimp fittings and who have suffered damage to their property caused by a failure in Zurn's brass crimp fittings. The proposed class includes, without limitation, all such persons or entities who contacted Zurn or its representatives about their Zurn Pex plumbing system and were denied or partially denied warranty coverage for failure of the Zurn Pex plumbing system based on a claim that "corrosion" was not covered by the warranty or that other alleged warranty limitations applied.

BY THE COURT:


     s/Ann D. Montgomery     
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: May 6, 2010.